**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| GARY BLITCH, DAVID KNIGHT, and DANIEL SNYDER,<br><br>Plaintiffs,<br><br>v.<br><br>The CITY OF SLIDELL; FREDDY DRENNAN, in his official capacity; and EUGENE HOWARD, in his official capacity,<br><br>Defendants. | CIVIL ACTION NO.: 16-17596<br><br>JUDGE: AFRICK<br><br>MAGISTRATE JUDGE: ROBY |

**MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs submit this reply Memorandum in opposition to Defendants' Motion for Summary Judgment. Defendants' motion further emphasizes that they are wrong on the both the law and the facts. Slidell City Code § 11-207 (the "Ordinance") is not, as Defendants contend, a reasonable regulation of solicitation needed to protect public safety. Instead it is both a prior restraint *and* a content-based restriction that prohibits a protected form of speech by criminalizing it when expressed without a permit. Public safety is not a justification for such an abrogation of rights except in limited circumstances that do not apply here. Moreover, the "compelling public safety need" that Defendants cite is spurious, as evidenced by the police reports on which they rely.

## I. The First Amendment protects panhandling

Defendants disingenuously question whether panhandling is protected speech, saying the United States Supreme Court has not recognized it as a protected constitutional right and claiming that "no controlling jurisprudence" requires that it be protected.[1] As a threshold matter, the broad safeguards of the First Amendment apply to all speech unless it is specifically excluded. *See Williams-Yulee v. Fla. Bar*, 135 S. Ct. 1656, 1676 (2015) ("Our cases hold that speech enjoys the full protection of the First Amendment unless a widespread and longstanding tradition ratifies its regulation.")

As the Fifth Circuit has noted, the Supreme Court excludes from full constitutional protection only narrow categories of speech: obscenity; child pornography; fighting words/incitement; libel, defamation, and fraud. *Herceg v. Hustler Magazine, Inc.*, 814 F.2d 1017, 1020 (5th Cir. 1987). Defendants do not suggest that panhandling belongs in one of those narrow categories or that it is undeserving of protection. Nor has any federal appeals court decided that soliciting alms is unprotected speech; on the contrary, several appellate courts have held expressly that it is. *See* Rec. Doc. 29 at 4.

The overwhelming weight of authorities—and logic—are controlling on this question.

[1] Although the Supreme Court has not explicitly decided whether the First Amendment protects soliciting alms when done by an individual, it has repeatedly upheld charitable solicitation by groups. *See Speet v. Schuette*, 726 F.3d 867, 874 (6th Cir. 2013). In fact, the Court has not given any indication that a distinction between individuals and groups is necessary on this point. *See Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 632 (1980) ("[C]haritable appeals for funds, on the street or door to door, involve a variety of speech interests … that are within the protection of the First Amendment.").

## II. Slidell's Ordinance is discriminatory, content-based censorship

Defendants concede that Slidell's Ordinance is content-based, stating alternately that it is "arguably content-based," "likely to be considered content-based," "technically content-based," and "necessarily content-based." *See* Rec. Doc. 30-1 at 7, 10, 11, 13. Nowhere do Defendants assert that the Ordinance is content-neutral. Instead, they claim it is viewpoint neutral because it "does not restrict what an applicant may say" or how he chooses to say it.

Because the Ordinance is a content-based restriction, it is by definition a prior restraint. It operates as a prohibition because it criminalizes such speech for those who don't first get a permit.[2] Those who wish to solicit alms but do not have a permit (whether they are unable or unwilling to obtain one) may be afraid to do so, thus having their speech rights chilled. Their expression is thereby censored.

Defendants contend that the Ordinance is viewpoint neutral because "all solicitation is treated equally" under Slidell's Municipal Code, which requires registration and/or permitting for "any type of solicitation activity." Sec. 20-4 ("Licensing; exceptions"). First, the various other provisions of the Slidell Municipal Code are not challenged here. Second, § 20-4 applies to business conducted "as a peddler or solicitor." It does not address "panhandling," or § 11-207 would be redundant. Finally, Defendants argue that "panhandling is not singled out for permitting," but Slidell's enactment of separate regulations that define and restrict "panhandling" do just that. *See* Slidell Municipal Code §§ 11-207, 11-207.1.

---

[2] Violation of the Ordinance is punishable by a maximum of six months in jail and a $1,000 fine. Slidell Municipal Code § 1-12.

Although the Ordinance does not facially discriminate against certain viewpoints, the fact that it regulates a form of speech based on its content (i.e. requests for aid) makes it discriminatory. The Ordinance restricts a panoply of expression subsumed in the solicitation of alms. Although "begging does not always involve the transmission of a particularized social or political message, it seems certain that it usually involves some communication of that nature." *Loper v. New York City Police Dep't*, 999 F.2d 699, 704 (2d Cir. 1993). "Even without particularized speech, however, the presence of an unkempt and disheveled person holding out his or her hand or a cup to receive a donation itself conveys a need for support and assistance." *Id*. This is precisely the image—and its concomitant political message—that Slidell seeks to restrict, and thereby marginalize. By regulating this activity, Slidell discriminates against impoverished people and censors their message of need.

## III. Slidell's Ordinance does not serve "public safety"

Defendants contend that Slidell's Ordinance was enacted to further "a compelling government interest of public safety," but a vague, insubstantial threat to public safety is not legally sufficient to justify the restriction it imposes. As the Fifth Circuit has noted, a "clear and present danger to the public safety is required to justify a restriction on the First Amendment right to free speech." *St. Ann v. Palisi*, 495 F.2d 423, 427 n. 21 (5th Cir. 1974). Moreover, the alleged "threat" to safety is demonstrably non-existent. Defendants cite "public safety issues caused by an increased number of panhandling related complaints" in Slidell, but they do not

identify what safety threat, specifically, is posed by the solicitation of alms. They also allude to "great concern about public safety among the citizenry and fear among business owners … that excessive panhandling may hamper local business." Rec. Doc. 30-1 at 16. This is the only "harm" identified, but it is speculative and unsupported.[3]

Slidell residents' "concern" about panhandling does not make it a problem, much less a threat to public safety threat (or business). It certainly does not justify restricting First Amendment rights of an entire category of people. Slidell Police Department reports submitted with Defendants' motion as exhibits clearly show that the "threat" in no way rises to the level that justifies a restriction on Constitutionally protected activity."[4] The fact that people who ask for help annoy some residents is simply not sufficient to justify the Ordinance.

Viewed as a whole, Slidell police reports belie several of Defendants' arguments: The "panhandling problem" does not threaten public safety, complaints are not increasing, and the "inability to identify panhandlers" is not increasing. In the 70 reports in Exhibit 6C, the only threat to public safety identified involves complaints of aggressive begging and persons in roadways, both of which are proscribed by measures other than the permit requirement (*see* Slidell Municipal

[3] The statement is appended with a footnote, but Defendants omit its referent (Footnote No. 33) from their motion.
[4] For example, one complaint made by a resident on December 23, 2016 describes "two black male transients walking up to cars begging for money." Rec. Doc. 30-6 at 224. The complainant "wanted to report the incident because she does not think people should be allowed to beg in Slidell." *Id*. The report concludes, "There was no indication that the two transients were aggressively begging." *Id*.

Code § 11-207.1, "Aggressive begging" and § 11-207.2, "Solicitors on public highways"). Many of these complaints were unfounded.[5]

Defendants admit that the number of arrests for panhandling has decreased over the past five years but attribute this decrease to the "increasing inability to identify panhandlers[.]" On the contrary, careful examination of the police reports submitted in Exhibit 6C shows that officers identified subjects in about half of the 70 complaints.[6] Police were unable to identify subjects only when they were unable to locate them, typically because the alleged panhandlers had left the area by the time officers arrived. Several of these reports indicate police did not investigate until several hours or days after the complaints were made. The alleged "inability to identify panhandlers" is not increasing.

Notably, 47 of the complaints in Exhibit 6C were reported in 2015, compared to 20 in 2016—a 57 percent decrease. Defendants allege "a rise in panhandling" by comparing complaints from 2015 to present (Exhibit 6C) to total arrests since 1997 (Exhibit 5A). This is not an apples-to-apples comparison; the arrest reports do not include overall complaints, and Defendants do not supply panhandling complaints before 2015. The reports included in Exhibit 5A show three arrests in 2014, three arrests in 2015, and one in 2016. *See* Rec. Doc. 30-3 at 19-20. They do not show "79

---

[5] For example, when an officer investigated a complaint of aggressive begging on Feb. 3, 2015, he found the subject, who was standing on the median, "was not aggressively begging." Rec. Doc. 30-6 at 32. On November 13, 2015, an officer investigated a complaint of several males in the roadway and found one on the median with two sitting under a tree; the subjects "did not enter street[.]" Rec. Doc. 30-6 at 153.

[6] Police made contact with the subject of the complaint in 33 of 70 of the reports, as evidence by their descriptions of "dispersing" the subjects or "advising" them, regardless of whether the subjects are identified by name. Police apparently did not respond to the scene or attempt to locate the subjects for every complaint. *See* Rec. Doc. 30-6 at 174. ("Complainant advised there was an older white male asking for money at the intersection. Officer advised complainant as long as the subject wasn't being aggressive they could ask for money.").

arrests for panhandling solicitation offenses" as Defendants claim but a variety of charges including aggressive begging and solicitation. Notably, several "solicitation" charges involved allegedly attempted *sales* such as door-to-door selling of magazines and cleaning products, sales of popcorn and trinkets at parades, and sales of toys at City Hall. *See* Rec. Doc. 30-3 at 14.

Regardless, it is telling that none of the 70 complaints since 2015 involved arrests, injuries, or accidents. In those cases, police officers typically discovered no violation, "dispersed" the subject(s), or could not locate them. The complaints in Exhibit 6C demonstrate that "panhandling" typically involves peaceful speech that poses no threat to public safety. Assuming *arguendo* that people soliciting alms commit crimes, Slidell has ample remedies through the enforcement of criminal laws. It need not criminalize speech to address its purported problem.

## IV. Slidell's Ordinance is not narrowly tailored

Defendants argue that Slidell's Ordinance imposes a "simple permit scheme" that simply requires people who solicit alms to "wear what amounts to a nametag." The "nametag" allegedly "remedies the situation in which a person is engaged in panhandling but refuses to leave . . . is obstructing traffic, or has become overly aggressive and flees the scene once a police complaint has been made[.]" But to be clear, this lawsuit is not about "aggressive" panhandling or obstructing traffic. Those arguments are irrelevant to the issues here, which address only the restrictions on those who are peacefully standing on public property.

The law is clear that any restriction on protected speech rights is not "minimal." *Elrod v. Burns*, 427 U.S. 347 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.") (citation omitted). The needless permit process is burdensome, requiring two trips to the Police Department; the applicant must supply personal information and documents simply to engage in speech. Finally, the "nametag" is a permit that the applicant "must keep displayed on his or her chest, hanging from a lanyard or clipped to their garment" with name and expiration date visible "at all times." Sec. 11-207 (d). This is not a nametag but a brand, and it does not "remedy" the alleged problem. As Exhibit 6C demonstrates, police did not need "nametags" to disperse complaint subjects or caution them against aggression and traffic obstruction.

Requiring people to wear a nametag will do nothing to cure whatever alleged problems may confront Slidell. According to Defendants' own records, the only instances in which Slidell police could not "identify" the subjects of panhandling complaints occurred when the subjects were no longer on the scene upon an officer's arrival. More important, nothing indicates that forcing people to wear their names on signs would make them more identifiable. In short, Defendants have not shown that the Ordinance is narrowly drawn to protect Slidell's purported interest in safety, or that the need exists or would justify a restriction on Constitutional rights.

## V. Slidell's Ordinance is unreasonable

Defendants assert that Slidell's Ordinance "does not impose traditional prior restraint tactics" because it is a permit scheme. But "it is settled by a long line" of

Supreme Court decisions that "an ordinance which, like this one, makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official … is an unconstitutional censorship or prior restraint[.]" *Shuttlesworth v. Birmingham*, 394 U.S. 147 (1969). Because Slidell's Ordinance makes the exercise of free speech contingent on the police chief's will, it is a prior restraint.

Defendants contend that the Ordinance is not subject to unbridled discretion, but they ignore the obvious abuse of discretion that the Ordinance allows. The chief can deny a permit if the applicant fails a "background check" for having been "convicted of violating begging or panhandling ordinances within the 12 months prior to the application date" or for other criminal violations. Sec. 11-207(b)(2). In other words, Slidell believes it may deny First Amendment rights to a person who allegedly has committed a misdemeanor. However, even imprisoned felons do not lose their freedom of speech. *See Burnette v. Phelps*, 621 F. Supp. 1157, 1160 (M.D. La. 1985) (citing *Pell v. Procunier*, 417 U.S. 817 (1974)).

The chief also may deny a permit if an application contains a false, fraudulent, or misleading statement. Sec. 11-207(b)(1), 11-207(c)(5).. Among the information required in an application is the applicant's "address, telephone numbers, and e-mail addresses, and any other information needed to establish the applicant's identity." Sec. 11-207(b). As Plaintiffs have noted, such information may not be available to a destitute person who may have no fixed address. Presumably, if a homeless applicant provided the address of a street where she stays, without a

residence, the chief could deem that statement false or misleading. More important, the chief of police has unfettered discretion under the Ordinance to deem any statement "misleading," as the term is not defined and has no objective criteria.

Finally, Defendants rely on cases of door-to-door solicitation to justify their ban. But unlike speech in a public forum that "takes place before an audience that chooses to be there, door-to-door canvassing may infringe upon privacy rights of other persons because it involves the uninvited entry upon private property[.]" *Ass'n of Cmty. Orgs. for Reform Now v. Town of E. Greenwich*, 453 F. Supp. 2d 394, 401 (D.R.I. 2006). Moreover, these cases and others cited in Defendants' motion were decided before *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218 (2015), which directs that strict scrutiny applies in this case. *See* Rec. Doc. 29 at 9-12.

## CONCLUSION

Slidell's Ordinance is not a reasonable time, place, and manner restriction; nor is it narrowly tailored. The vague "public safety" interest that Defendants assert is neither compelling nor served by the Ordinance. The Ordinance is a prior restraint and a content-based restriction on speech. For these and the foregoing reasons, Defendants' Motion for Summary Judgment must be denied.

Respectfully submitted by:

/s/ *Bruce Hamilton*
Bruce Hamilton, La. Bar No. 33170
ACLU Foundation of Louisiana
P.O. Box 56157
New Orleans, Louisiana 70156
Telephone: (504) 522-0628
Facsimile: (888) 534-2996
Email: bhamilton@laaclu.org

RONALD L. WILSON, La. Bar No. 13575
ACLU Foundation of Louisiana
COOPERATING ATTORNEY
701 Poydras Street – Suite 4100
New Orleans, Louisiana 70139
PH: (504) 525-4361
FAX: (504) 525-4380
Email: cabral2@aol.com

**CERTIFICATE OF SERVICE**

I hereby certify that on May 9, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.

Dated : May 9, 2017 /s/ *Bruce Hamilton*
Bruce Hamilton